Before the First Division, March 11, 1948

No. 52212.—W. A. Gleeson v. United States, protests 129273–K and 129462–K
(St. Albans).

Mollison, Judge: The plaintiff in this case imported into the United States through the port of St. Albans three shipments of a commodity described on the invoices as "soft sawdust." Upon liquidation of the entries the collector of customs classified the merchandise as wood flour and assessed duty at the rate of 25 percent ad valorem under the provision therefor in paragraph 412 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. §1001, par. 412), as modified by the Presidential proclamation issued under the provisions of section 336 of the same act reported in 59 Treas. Dec. 287, T. D. 44604. The present protests, which were consolidated for trial and disposition, were filed by the plaintiff against such action, claiming the merchandise to be properly dutiable at only 7½ percent ad valorem under the provision in paragraph 1555 of the same act, as modified by the Trade Agreement with the United Kingdom, T. D. 49753, for "Waste, not specially provided for."

At the trial of the issue plaintiff established through the testimony of the assistant to the superintendent of the ultimate consignee, who supervised the procurement of the commodity in question, that the accepted definition in the trade of wood flour was a product that was "40-mesh and finer," meaning that 100 percent of the product would pass through a screen having 40 or more meshes per linear inch. Sawdust, the witness testified, was a coarser product.

By agreement, the report of a Government analyst made on a sample of the merchandise was received in evidence as exhibit 1. The pertinent portion of it reads as follows:

The sample is sawdust.

| | |
|---|---:|
| Passing #20 screen | 91. 8% |
| Passing #40 screen | 34. 7% |
| Retained on #40 screen | 65. 3% |

It is noted that the Government analyst concluded that the sample consisted of sawdust, and did not conclude that it consisted of wood flour. That these two products have been uniformly distinguished both in the trade and in tariff history does not seem to be open to question. The conclusion of the Government analyst is amply supported by reference to the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission and printed for use of the Committee on Ways and Means of the House of Representatives at the time the bill which ultimately became the Tariff Act of 1930 was being considered by Congress. At page 963 thereof, under the caption of "Wood Flour—Description and Uses," we find the following:

Wood flour is wood ground into a dry powder of the fineness of flour which will pass through a mesh screen of from 40 to 100 meshes per linear inch.

and at page 2153, under the caption "Waste, N. S. P. F." it is said that waste, n. s. p. f., includes, among other things, sawdust.

A report made by the Tariff Commission to the President, being No. 6, Second Series, under date of February 2, 1931, on the subject of wood flour, contains the following statement:

Wood flour is mechanically ground wood (principally white pine) screened to uniform finenesses ranging from 40 to 200 meshes per inch.

The defendant virtually concede in its brief that the commodity in issue is not wood flour as such, but contends that the evidence shows that it contains a considerable amount of wood flour by reason of the fact that a substantial portion of the commodity meets the requirement for wood flour by passing through a 40-mesh screen, and that under the provisions of section 508 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1508), relating to commingled goods, the highest rate of duty applicable to any part of the imported commodity should be taken, which, in this case, would be the duty applicable to wood flour.

Section 508, *supra*, reads as follows:

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained

This contention of the Government seems to be in the nature of an afterthought, since there is no mention of the possible application of section 508 in the official papers. However, we are of the opinion that section 508 is not applicable to the merchandise at bar; that it is not commingled goods within the meaning of the statute. "Sawdust," according to Webster's New International Dictionary, 2d Edition, 1945, is—

—Dust or small fragments of wood (or of stone, etc.) made by the cutting of a saw * * *.

and according to Funk & Wagnalls New Standard Dictionary, 1942, it is—

—Small fragments or dust, especially of wood, cut or torn out by a saw.

It thus appears that by its very nature sawdust is a product not necessarily uniform as to fineness, ranging from dust to small fragments. Therefore, it is quite probable that sawdust, as such, would contain some quantity of particles which would pass through a 40-mesh screen. This, however, would not change the fact that the commodity as a whole would be sawdust, and we so find in this case.

Numerous decisions of this and our appellate court have held that sawdust is properly classifiable under the provision for "Waste, not specially provided for." Among these may be cited *State Chemical Co.* v. *United States*, 63 Treas. Dec. 970, T. D. 46428, and *United States* v. *C. J. Tower & Sons*, 17 C. C. P. A. 90, T. D. 43427. That claim in the protests here involved is therefore sustained, and judgment will issue accordingly.